UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Federal Grievance Committee    :
                               :
v.                             :      Civil No. 3:99GP23 (JBA)
                               :
Meryl Anne Spat                :

## Memorandum of Decision and Public Censure

Following presentment of Respondent by the Federal Grievance Committee, hearings were held to determine the appropriate discipline to be imposed under the circumstances.  The Stipulation of Facts provides clear and convincing evidence that Respondent violated the Rules of Professional Conduct §§ 1.1, 1.3, 1.4 and 1.16(d) in her representation of Aida Kennawi in her Social Security appeal.

In summary, Respondent failed to exercise the degree of competence required by members of the bar when she undertook representation of Ms. Kennawi without sufficient preparation.[1] Although Ms. Kennawi already had filed a pro se complaint in federal court before retaining Respondent, Respondent filed an appearance without ever even reviewing the court file on the case.  Respondent thus was unable to competently advise her client about her case.  Respondent further did not represent her

---

[1] "A lawyer shall provide competent representation to a client.  Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."  Conn. Rules of Prof. Conduct § 1.1.

1

client's interests with the required diligence[2] as she did not file her appearance for more than two months after being retained, during which time and unbeknownst to her a motion to dismiss was filed and granted without any opposition ever being filed by Ms. Kennawi.  Following dismissal, Respondent filed a perfunctory motion to reopen which was denied without prejudice pending response to the motion to dismiss, which she never filed.  Thereafter Respondent did not advise her client about the reasons for dismissal and filed a motion to withdraw her appearance without reasons or notice and explanation to the client or opportunity to secure new counsel, in violation of her obligation to communicate in a reasonable manner[3] and to terminate representation in a manner that protects the client's interests.[4]

---

[2]"A lawyer shall act with reasonable diligence and promptness in representing a client."  Conn. Rules of Prof. Conduct § 1.3.

[3]"(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
       (b) A lawyer shall explain a matter to th eextent reasonably necessary to permit the client to make informed decisions regarding the representation."
Conn. Rules of Prof. Conduct § 1.4.

[4]"Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as allowing time for employment of other counsel ...  If the representation of the client is terminated ... by the lawyer withdrawing from representation ..., the lawyer shall confirm the termination in writing to the client before or within a reasonable time after the termination of the representation."
Conn. Rules of Prof. Conduct § 1.16(d).

When the court denied the motion to withdraw for failure to certify that the client had been notified in writing, Respondent did not renew the motion to withdraw or apprise the client of the status of her representation.

While initial investigation would have shown Respondent that Ms. Kennawi's claim for additional benefits lacked merit because of her receipt of worker compensation benefits, Respondent's abject failures of duty to the client, and mistaken belief that her ethical duties to the client ended when Respondent summarily terminated the relationship by letter, caused this Court serious concern about Respondent's fitness and competence to practice on behalf of clients reposing their trust in her as their attorney, as well as how such misconduct sullies the legal profession's reputation.

Accordingly, the Court appointed a Special Master, specialized in Social Security benefits matters, to perform random audits and report to the Court his opinion as to whether the Respondent appeared to be otherwise adequately conducting her Social Security practice, which was the majority of her caseload. The Special Master's case file audit and review of Respondent's office procedures and practices formed the basis of his opinion that her "practice seems to be consistent with what I would consider any other reasonable practice in this area [to be] and representative of how ... a one-person law firm would handle

these matters." Transcript of Hearing 11/1/02, at 35.  The Special Master further noted that Respondent had reduced the size of her caseload and had instituted the use of numerous case screening and processing forms, pleadings, and computerized case notes and chronologies.  His fees ($5861.25) and costs ($107.92) have been borne by Respondent.

Having been presented with evidence that Respondent's deficient ethical conduct in this case did not appear to be endemic to her practice, the Court turns to the disputed area of discipline.  The Grievance Committee urged a one month suspension; the Respondent submitted that no discipline in excess of public censure was warranted.

"The purpose of a disciplinary proceeding is not punitive but to inquire into the fitness of the lawyer to continue in that capacity for the protection of the public, the courts and the legal profession." Ballard v. State Bar of Cal., 35 Cal. 3d 274, 291 (1983) (citation and quotation marks omitted).  The Grievance Committee viewed the seriousness of Respondent's conduct as requiring suspension to convey that message to her and to insure that this conduct never occurs again.  The Court finds that suspension is not warranted at this point and in the context of this case.

The Court considers the existence of aggravating and mitigating factors set out in the ABA Model Standards for

4

Imposing Lawyer Sanctions, § 9.0 et seq.  Most of the aggravating factors listed in § 9.22 are not present here, i.e. prior disciplinary offenses (Compare In Re Roche, 678 N.E.2d 797, 799 (Ind. 1997) (attorney suspended where he had received prior discipline from same court)), dishonest or selfish motive, pattern of misconduct, obstruction of disciplinary proceeding, or illegal conduct.  While Respondent inappropriately characterized Ms. Kennawi's complaint against her as "frivolous" when it was, in fact, meritorious, and largely expressed her embarrassment to the Court without any semblance of apology to her former client, this does not amount to "refusal to acknowledge [the] wrongful nature of [her] conduct."  See ABA Model Standards, § 9.22(g).

In mitigation, Respondent had no prior disciplinary record, had emotional and personal problems at the time, was reasonably candid with the Committee, was presented on offenses then 3 years old, and has now been subject to court-ordered monitoring at substantial cost to her.  See §§ 9.32(a), (c), (e), (k), (m).

Two further factors influence the Court's decision on discipline.  First, Respondent was charged with unprofessional conduct in only one case.  Compare In re Fischer, 499 N.W.2d 677 (Wis. 1993) (attorney suspended for signing pleadings and briefs in five cases without reviewing files or contacting clients).  Second, although the Rules of Professional Conduct apply regardless of whether injury actually occurs to a client, the

degree of discipline factors in whether the client suffered "actual or potential injury."  See ABA Model Standards, § 3.0(c) In this case, Ms. Kennawi had no entitlement to Social Security benefits and did not lose rights through Respondent's failure to protect her interests.  Compare Clark v. Sup. Ct. Comm. on Prof. Conduct, 898 S.W.2d 446 (Ark. 1995) (attorney suspended for ignoring clients' potentially meritorious personal injury case, despite knowledge it had been filed in the wrong jurisdiction and was the subject of a motion to dismiss, and allowing the statute of limitations to expire).

    While Respondent's case mishandling violated some of the most fundamental precepts of legal practice, and was made more egregious by the fact that Respondent had been in practice for 7 years at the time, balancing the factors in light of the purposes of safeguarding the public, court administration and legal profession's reputation, the Court concludes that a public censure will will satisfy all operative objectives.  Further, by making this opinion public, there is a record against which any subsequent violations of the Rules of Professional Conduct by Respondent can be measured for imposition of harsher discipline.

                                 IT IS SO ORDERED.

                                 /s/
                                _____
                                JANET BOND ARTERTON
                                United States District Judge

**Dated at New Haven, Connecticut, this 19th day of April, 2006.**